UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

JOSEPH QUON,

                                                PLAINTIFF,

                -AGAINST-                              14 CV 9909 (RJS)

NEW YORK CITY, POLICE OFFICER SHAREKA
HENRY, POLICE OFFICER JOI GRANT, and POLICE
OFFICER JOHN DOE, individually, and in their capacity
as members of the New York City Police Department,

                                                DEFENDANTS.

------------------------------------------------------------------------ x

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT**

                                                *Respectfully submitted,*

                                                PETERSONDELLECAVE, P.C.

                                                233 Broadway, Suite 1800

                                                New York, New York 10279

                                                (212) 240-9075

                                                *Attorneys for Plaintiff*

Dated: December 11, 2015

## **TABLE OF CONTENTS**

| | |
|---|---|
| TABLE OF AUTHORITIES…………………………………………………..………..…………….. | 3 |
| PRELIMINARY STATEMENT………………………………………………….......…….…….. | 4 |
| STATEMENT OF FACTS……………………………………………………………………….…..... | 4 |
| STANDARD OF REVIEW……………………………………………………………………………... | 4 |
| ARGUMENT……………………………………………………………........................................ | 5 |
| I. Plaintiff Was Falsely Arrested - He Was Not A Danger To Himself Or Others And Defendants Had No Reason To Believe Otherwise…………...................................................... | 5 |
| II. Defendants Are Not Entitled to Qualified Immunity Because There Was Clearly No Probable Cause to Arrest Mr. Quon, and Requiring Probable Cause to Arrest is a Clearly Defined and Well-Established Constitutional Rule…………………………........................................................ | 8 |
| CONCLUSION……………………………………………………………………………………….. | 11 |

# **TABLE OF AUTHORITIES**

**Statutes**
Federal Rules of Civil Procedure, Rule 56 ………………………………………...    4

**Cases**
*Roffman v. Knickerbocker Plaza Assocs* (2008 U.S. Dist. LEXIS 32047, 2008 WL    4
919613 (S.D.N.Y. Mar. 31, 2008)
*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986))…    5
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)………………………    5
*5 Borough Pawn LLC v. Marti*, 753 F. Supp. 2d 186, 192 (S.D.N.Y. 2010)…………    5
*Donahue v. Windsor Locks Bd. of Fire Commn'rs*, 834 F.2d 54, 57 (2d Cir. 1987)….    5
*Cerrone v. Brown*, 246 F.3d 194, 199 (2d Cir. 2001)    8
*Anthony v. City of New York* (339 F.3d 129, 138 (2d Cir. 2003)    9
*Vasquez v. Marciano* (169 F. Supp. 2d 248 (SDNY 2001)    9
*Kerman v City of New York*, 261 F.3d 229 (2d. Cir. 2001)    10

## PRELIMINARY STATEMENT

This a case where Plaintiff, Mr. Quon, lawfully denied Defendants entry to his home and, as a result, was forcefully dragging from his apartment, physically assaulted, detained and taken to hospital in handcuffs. Defendants now attempt to justify their actions by claiming Mr. Quon was a threat to himself and others. This is not the case. Mr. Quon posed no threat whatsoever and there was no legal justification for his arrest and detention. Defendants rely entirely on one case (*Roffman v. Knickerbocker Plaza Assocs (2008 U.S. Dist. LEXIS 32047, 2008 WL 919613 (S.D.N.Y. Mar. 31, 2008)),* and that case is not on point.

Accordingly, Plaintiff hereby responds to and opposes Defendants' Motion for Partial Summary Judgment ("Defs' SJ Motion").

## STATEMENT OF FACTS

Plaintiff refers to the attached Rule 56.1 Statement of Facts for a summary of the relevant facts.

## STANDARD OF REVIEW

Defendants move this Court for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." (FED. R. CIV. P. 56(a))

The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and identifying which materials "it believes demonstrate the absence of a genuine

4

issue of material fact" (See *Celotex Corp. v. Catrett*, 477 U.S. 317, 3223 (1986)). The burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial" (See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). <u>In deciding a summary judgment motion, the court views the record in the light most favourable to the party opposing summary judgment and "resolves all ambiguities and draws all reasonable inferences against the movant"</u> (See *5 Borough Pawn, LLC v. Marti*, 753 F. Supp.2d 186, 190 (S.D.N.Y. 2010) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Donahue v. Windsor Locks Bd. of Fire Commn'rs*, 834 F.2d 54, 57 (2d Cir. 1987)) emphasis added).

For the reasons set forth below, Plaintiff respectfully requests that the Court deny Defendants' Motion for Partial Summary Judgment in its entirety.

## ARGUMENT

### I.  Plaintiff Was Falsely Arrested - He Was Not A Danger To Himself Or Others And Defendants Had No Reason To Believe Otherwise

Defendants had no reason to believe that Mr. Quon was a danger to himself or others. This was not an emergency situation and Mr. Quon was not in need of aid, yet Defendants handcuffed and detained Mr. Quon against his will. At the very least, there are disputed issues of fact here and, therefore, summary judgment is not appropriate.

Defendants argue that the arrest of Mr. Quon by Officer Grant and Officer Henry was justified because the officers believed an emergency situation existed and that Mr. Quon presented a risk of harm to himself and others. Defendants cite to the case of *Roffman v. Knickerbocker Plaza*

*Assocs* (2008 U.S. Dist. LEXIS 32047, 2008 WL 919613 (S.D.N.Y. Mar. 31, 2008)) in support of their argument. However, in *Roffman* the plaintiff left a burning pot on the stove that was emitting smoke from the apartment and completely ignored knocks on the door from emergency services. The situation was exacerbated because the plaintiff had cluttered papers in her apartment that posed a fire risk from the burning pot on the stove. In addition, the plaintiff's behavior was deemed strange because she was present, yet appeared unaware of the boiling pot and the danger it posed. This is quite different from the current case.

In the current case, Mr. Quon did not ignore the knocks at his door. He responded and spoke to the firefighters and Defendants (See *Def's Exhibit F*, Pl Dep Tr: 43-44: 17-2). Mr. Quon was unaware of any leak at that time (See *id*: 47:4-7) and was within his rights to deny entry to his apartment – this does not constitute a reason to deem Mr. Quon a risk to himself or others. Further, it is undisputed that there was no smoke coming from Mr. Quon's apartment, no boiling pot left on the stove, and thus no risk of fire. This was not an emergency situation.

Defendants argue that Mr. Quon's cluttered apartment and the alleged water leak were reasons for Officer Grant and Officer Henry to deem Mr. Quon a risk to himself and others. However, both Officer Grant and Officer Henry stated that they never set foot inside Mr. Quon's apartment but stayed in the hallway throughout the incident (See *Def's Exhibit J*, Grant Dep Tr: 54:20-22, and *Def's Exhibit K*, Henry Dep Tr: 27:24). Therefore, at the time of Mr. Quon's arrest, neither officer had any knowledge as to the inside of Mr. Quon's apartment, nor did they have any actual knowledge of any water leak.

Defendants also claim that Mr. Quon was a risk to himself or others because he was dressed in only his underwear. This is absurd and disingenuous. Mr. Quon was dressed in his underwear because it was early in the morning and he had just been woken by loud banging on his door (See *Def's Exhibit F*, Pl Dep Tr: 43: 7-11). FDNY then removed Mr. Quon's door from its hinges before Mr. Quon had an opportunity to dress himself (See *id*: 49:14-18: "Q: Did you get dressed? A: I wish I did. I didn't have a chance to and I didn't expect to be removed from my apartment").

Defendants further argue that Mr. Quon gave unintelligible responses to Officer Grant's questions. This is entirely disputed by Mr. Quon and not supported by any other evidence (See *id*: 85:1-19). In fact, Officer Henry stated that the reason she could not understand Mr. Quon, who is fluent in Cantonese, is that he was speaking a language other than English (See *Def's Exhibit K*: 28: 20-24). Further, the medical records note that Mr. Quon was calm, collected, pleasant and cooperative and was only upset because he did not do anything wrong and was not resisting arrest (See *Plaintiff's Exhibit A*: p6, p13).

Defendants also claim that Mr. Quon swung a metal bar when the door was removed. Again, this is a disputed fact, as Mr. Quon categorically denied swinging any metal bar or object (See *Def's Exhibit F*, Pl Dep Tr: 67: 3-11). Further, the non-party witness, Mr. Pedro Moises, who is the superintendent at Mr. Quon's building and was present at the scene, stated in his deposition that Mr. Quon was not holding any metal bars and that Mr. Quon could not have been swinging any metal bars because the doorway was too narrow (See *Def's Exhibit G*, Moises Dep Tr: 24-25: 21-2).

Ultimately, Defendants are arguing that police officers have the right to arrest any individual (under the guise of posing a threat to themselves or others) based on an individual being dressed in their underwear when they get up in the morning, having a cluttered home, speaking a foreign language and living alone. In this case, Mr. Quon has absolutely no history of mental illness or psychological disorder, yet he was handcuffed behind his back and forcibly taken to the hospital (See *Def's Exhibit F*, Pl Dep Tr: 104: 9-12). The doctor that treated Mr. Quon best summed up the situation by stating in the medical records: "It is unclear to me why this patient is here. It sounds like they were investigating something in his building and it just escalated resulting in contusions. The patient is calm, answering all questions appropriately" (See *Plaintiff's Exhibit A*: p13).

## II. Defendants Are Not Entitled to Qualified Immunity Because There Was Clearly No Probable Cause To Arrest Mr. Quon, And Requiring Probable Cause To Arrest Is A Clearly Defined And Well-Established Constitutional Rule

Defendants argue that, even if they did not have probable cause to arrest and detain Mr. Quon, they are entitled to qualified immunity. This is not the case.

Qualified immunity shields government officials performing discretionary acts from liability if (1) their conduct did not violate clearly established statutory or constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights (See *Cerrone v. Brown*, 246 F.3d 194, 199 (2d Cir. 2001).

As set forth above, Defendants did not have probable cause to arrest and detain Mr. Quon. Further, no reasonably competent officer would believe that he or she could detain Mr. Quon based on the information Defendants had at the time. Therefore, Defendants are not entitled to qualified immunity.

Defendants argue that police officers are entitled to qualified immunity if they are rendering aid in exigent circumstances, and cite to the case of *Anthony v. City of New York* (339 F.3d 129, 138 (2d Cir. 2003)). However, the case of *Anthony* is irrelevant here, as there were no exigent circumstances in the arrest of Mr. Quon. In *Anthony*, the officers were responding to a 911 call in which a female caller reported that a man was attacking her with a knife and gun. This clearly constituted exigent circumstances because the 911 call originated from the apartment that the police officers were trying to enter. Clearly, this is quite different from the current case, where there was no risk of imminent death to Mr. Quon. Further, the case of *Anthony* is not on point because the officers there discovered an unresponsive female in the apartment, who suffered from Down Syndrome, and the court placed great weight on the fact that the arresting officers were specifically instructed by a superior officer to arrest the plaintiff. In the current case, Mr. Quon does not suffer from any mental health issues, was not in imminent danger, and there was no such instruction from a superior officer.

Defendants also suggest that Officer Grant and Officer Henry would have been accused of callous indifference to Plaintiff's needs had they failed to assist him, citing to the case of *Vasquez v. Marciano* (169 F. Supp. 2d 248 (SDNY 2001)). This is somewhat ironic, given that the assistance provided by Officers Grant and Officer Henry consisted of forcefully dragging Mr.

9

Quon out of his apartment; bending back his fingers, wrists and elbows; kneeing him across the back of his neck; inflicting gouge marks across his back; handcuffing him; detaining him unlawfully and removing him to the hospital (See *Def's Exhibit F*, Pl Dep Tr: 82:23-25). In addition, the case of *Vasquez* is entirely distinct from the current case, as the plaintiff in *Vasquez* **clearly needed medical attention for physical injuries and clearly posed a danger to himself and others on account of the fact that he was driving with an expired license, had smoked two bowls of marijuana, sniffed two or three lines of cocaine, drank fifteen beers and crashed into a tree while evading the police, as well as attempting to choke himself with his handcuffs** (emphasis added). Here, Mr. Quon was not intoxicated, did not attempt to harm himself, and the only treatment he required was for physical injuries that had been inflicted by Defendants themselves.

Interestingly, Defendants also cite the case of *Kerman v City of New York*, 261 F.3d 229 (2d. Cir. 2001). This is a case where the Second Circuit rejected the defendant's qualified immunity defence and denied summary judgment on the grounds that plaintiff disputed the officer's claims that he was ranting and acting unstable, and disputed that his apartment was a dangerous hazard: "Kerman disputes these claims, contending that he was calm during most of his encounter with the police and that his apartment was, at worst, untidy. **At this stage we must credit Kerman's version of the facts. In that light, a fact-finder could well find that the police acted outside the bounds of both the Fourth Amendment and the qualified immunity standards of objective reasonableness in placing Kerman in restraints for his eventual transport to Bellevue**. According to Kerman, the police not only failed to reasonably investigate his mental

10

state, they also grossly misjudged the situation as it unfolded before them" (See *Kerman v City of NY*, 261 F3d 229, 241 [2d Cir 2001] emphasis added).

## Conclusion

For the foregoing reasons, we respectfully request the Court deny Defendants' Motion for Partial Summary Judgment in its entirety and with prejudice, and grant any other relief that the Court deems just and proper.

**Dated:** December 11, 2015

    New York, New York

Respectfully submitted,

**PETERSON DELLECAVE, LLP**

*Attorneys for Plaintiff*

By: _____/s/_____
    Malcolm Anderson (MA 4852)
    233 Broadway, Suite 1800
    New York, New York 10279
    (212) 240-9075