UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH QUON,

                      Plaintiff,

   -v-                                        No. 14-cv-9909 (RJS)
                                                 OPINION AND ORDER

CITY OF NEW YORK, *et al.*,

                      Defendants.

RICHARD J. SULLIVAN, District Judge:

      Plaintiff Joseph Quon brings this action pursuant to 42 U.S.C. § 1983 against Defendants the City of New York and Police Officers Shareka Henry and Joi Grant, asserting that his Fourth and Fourteenth Amendment rights were violated when the officers falsely arrested him and subjected him to excessive force. Now before the Court is the motion of Defendants Henry and Grant (collectively, "Defendants") for partial summary judgment on Plaintiff's false arrest claim. (Doc. No. 34.) For the reasons stated below, the motion is denied.

I. BACKGROUND[1]

      On September 26, 2014, a tenant in Plaintiff's building called the fire department to complain about a water leak in the building. (Defs. 56.1 ¶ 7.) Several firefighters, including

---

[1] The following facts are taken from Defendants' Local Civil Rule 56.1 Statement (Doc. No. 32 ("Defs. 56.1")), Plaintiff's response (Doc. No. 37 ("Pl. 56.1 Counter")), Defendants' response (Doc. No. 39 ("Defs. 56.1 Counter")), the affidavits and declarations submitted in connection with Defendants' motion, and the exhibits attached thereto. Unless otherwise noted, where one party's 56.1 Statement is cited, the other party does not dispute the fact asserted, has offered no admissible evidence to refute that fact, or merely objects to inferences drawn from that fact. In deciding the present motions, the Court also considered Defendants' memorandum of law in support of their motion for summary judgment (Doc. No. 34 ("Defs. Mem.")); Plaintiff's memorandum of law in opposition to Defendants' motion for summary judgment (Doc. No. 36 ("Pl. Opp.")); Defendants' reply in further support of its motion for summary judgment (Doc. No. 38 ("Defs. Reply")); and Plaintiff's letter in response to Defendants' reply (Doc. No. 40).

Lieutenant Patrick Brady, responded to the call around 8:06 a.m., and Lieutenant Brady made a determination that the source of the leak was Plaintiff's apartment. (*Id.* ¶¶ 8-9.) Lieutenant Brady subsequently knocked on Plaintiff's door and requested entry, but Plaintiff declined to open the door. (*Id.* ¶ 10-11.) As a result, Lieutenant Brady called the New York City Police Department, and Officers Grant and Henry responded to the scene. (*Id.* ¶¶ 12-13.) Lieutenant Brady informed the officers that the superintendent had called about a water leak – although, as noted above, the record before the Court reflects that the call actually came from a tenant in the building (*id.* ¶ 7) – and that Plaintiff refused to open the door. (*Id.* ¶ 14.) Lieutenant Brady subsequently instructed firefighters to remove the door from its hinges. (*Id.* ¶ 16.)

The parties give different accounts of the events that followed. According to Defendants, Plaintiff swung a long metal object at the officers when the door was removed. (*Id.* ¶¶ 17-18.) Defendants further assert that Plaintiff – who was wearing only underwear and appeared "disheveled" – "refused to cooperate and was not speaking intelligibly and was aggressive." (*Id.* ¶¶ 19-20.) Defendants state that the inside of Plaintiff's apartment was "extremely cluttered" and that Plaintiff gave "nonsensical answers" when questioned about his name and the date. (*Id.* ¶¶ 29, 31.) Defendants also point to the deposition testimony of the building's superintendent, Pedro Moises Toribio Pena, who stated that Plaintiff was "very uncomfortable, very out of control, breathing very heavy, very suffocated." (Declaration of Lisa Sohn, dated Nov. 19, 2015 ("Sohn Decl."), Doc. No. 35, Ex. G at 18:12-13.) According to Toribio, Plaintiff was "furious." (*Id.* at 18:20.) In addition, Defendants assert that Plaintiff sought to prevent entry into his apartment and pushed one firefighter and one police officer, after which Officer Henry handcuffed Plaintiff. (Def. 56.1 ¶¶ 25-26.)

By contrast, Plaintiff paints a very different picture of what occurred that morning. Although Plaintiff acknowledges that he was wearing only underwear at the time of the encounter (Pl. Counter 56.1 ¶ 19), he attributes this to the fact that it was early in the morning (*id.* ¶47). Furthermore, while Plaintiff admits that he did not open the door to the officers (*id.* ¶ 11), he contends that he did respond to the officers' knocks (Sohn Decl., Ex. J at 43:16-25).  Plaintiff also denies swinging a metal object or otherwise acting aggressively toward the officers.  (Pl. Counter 56.1 ¶¶ 17-18, 20.)  Plaintiff further states that he did not push a firefighter or a police officer and that any uncomfortableness or heavy breathing was due to the fact that the officers were "grabbing his arm, bending his fingers, wrists and elbows," and "cho[]king him."  (*Id.*  ¶¶ 23, 26.)  Plaintiff attributes the officers' perception that he was confused and incoherent to the fact that he was speaking Cantonese, not English.  (*Id.* ¶ 33.)

The parties agree, however, that Office Henry subsequently called an ambulance for Plaintiff and that two EMTs arrived at the scene at 9:26 a.m.  (Defs. 56.1 ¶¶ 34-35.)  The parties also agree that Plaintiff told the EMTs that he was stressed and paranoid (*id.* ¶ 37), although Plaintiff claims that this was "a result of being falsely arrested and assaulted by Defendants" (Pl. Counter 56.1 ¶ 37).  Around 9:48 a.m., Plaintiff was transported to St. Luke's Roosevelt Hospital. (Def. 56.1 ¶ 38.)  After Plaintiff was interviewed by a triage nurse, Officer Henry removed his handcuffs and told him he was free to leave.  (*Id.* ¶ 39.)  Plaintiff left the hospital around 1:30 p.m. (*Id.* ¶ 42.)  No charges were ever filed against Plaintiff.  (*Id.* ¶ 41.)

On December 16, 2014, Plaintiff filed his original complaint, alleging two causes of action under 42 U.S.C. § 1983 for false arrest and excessive force against the City of New York and two unidentified officers.  (Doc. No. 1.)  Defendant the City of New York answered that complaint on March 9, 2015.  (Doc. No. 5.)  On June 30, 2015, Plaintiff amended his complaint to name the

individual police officers.  (Doc. No. 14.)  Defendants answered the amended complaint on September 9, 2015.  (Doc. No. 19.)  The parties conducted discovery according to the plan for Section 1983 cases, and, on November 20, 2015, Defendants Grant and Henry filed a motion for partial summary judgment seeking dismissal of Plaintiff's false arrest claim.  (Doc. No. 31.)  The motion was fully briefed as of December 29, 2015.  (*See* Doc. Nos. 34, 36, 38, and 40.)

## II. LEGAL STANDARD

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  There is "no genuine dispute as to any material fact" where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts), *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material), *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a fact is genuinely disputed, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments."  *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996).  Nevertheless, to show a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation

4

marks omitted).  "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), as well as the existence of a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson*, 477 U.S. at 252, are insufficient to create a genuinely disputed fact.  A moving party is "entitled to judgment as a matter of law" on an issue if (1) it bears the burden of proof on the issue and the undisputed facts meet that burden; or (2) the nonmoving party bears the burden of proof on the issue and the moving party "'show[s]' – that is, point[s] out . . . – that there is an absence of evidence [in the record] to support the nonmoving party's [position]."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

### III. DISCUSSION

#### A. False Arrest

Section 1983 provides a civil cause of action for damages against any person who, acting under color of state law, deprives another of a right, privilege, or immunity secured by the Constitution or laws of the United States.  *See* 42 U.S.C. § 1983.  "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."  *Duamutef v. Morris*, 956 F. Supp. 1112, 1115 (S.D.N.Y. 1997) (citing *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993)).  To prevail on a claim under Section 1983, a plaintiff must demonstrate (1) the deprivation of any right, privilege, or immunity secured by the Constitution or laws of the United States (2) by a person acting under the color of state law.  *See id.*  "In order to establish a § 1983 claim . . . , a plaintiff must also show that the defendants were *personally* involved in the unconstitutional conduct."  *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995) (emphasis added); *see also Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987) (finding a complaint to be facially defective when the plaintiff failed to allege that "defendants were directly and personally responsible for the purported unlawful conduct").

A Section 1983 claim for false arrest, based on the Fourth Amendment right to be free from unreasonable seizures, "is substantially the same as a claim for false arrest under New York law." *Weyant*, 101 F.3d at 852. To prove such a claim, a plaintiff must show that "(1) the defendants intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994). The law is clear that probable cause makes a confinement "privileged" and "is a complete defense to a claim of false arrest." *Weyant*, 101 F.3d at 852. As relevant here, probable cause exists to detain or involuntarily hospitalize someone as long as the officer has probable cause or a reasonable basis to believe the person is a danger to himself or others. *See Roffman v. Knickerbocker Plaza Assoc.*, No. 04-cv-3885 (PKC), 2008 WL 919613 at *8 (S.D.N.Y. Mar. 31, 2008); *Heilbut v. City of New York*, No. 04-cv-4332 (DLC), 2006 WL 2807722 at * 4 (S.D.N.Y. 2006) (requiring "reasonable grounds for believing that the person seized is dangerous to [himself] or to others"). "[T]he probable cause standard . . . is a practical, nontechnical conception." *Illinois v. Gates*, 462 U.S. 213, 231 (1983) (internal quotation marks omitted).

Defendants do not dispute that Plaintiff was subjected to a custodial arrest (Defs. Mem. at 6), but they identify several facts that they assert gave the officers a reasonable basis to believe that Plaintiff was a danger to himself or others, including Plaintiff's refusal to open the door, the fact that he was wearing only underwear, his cluttered apartment, his nonsensical responses to the officers' questions, the absence of a caretaker in the apartment to consult on mental health, and the water leak in his apartment (*id.* at 7-8). Citing these facts, Defendants rely on Judge Castel's decision in *Roffman* to argue that Plaintiff's behavior and the danger posed by the water leak in his apartment gave officers a basis to involuntarily hospitalize him. 2008 WL 919613 at *8.

Specifically, in *Roffman*, the court found that officers had reasonable grounds to involuntarily hospitalize a plaintiff based on a report of smoke and a burning smell, and the subsequent discovery of a burning pot in the plaintiff's apartment. *Id.* at *7-8. In so concluding, the court noted that the clutter of the apartment – specifically, the "'fireload' of stacked papers" – made it more likely that a potential fire caused by the burning pot could spread. *Id.* at *8. As such, the court found that the officers had a reasonable basis to conclude that the plaintiff posed a danger to himself and his neighbors. *Id.*

This case, however, is not like *Roffman*. Here, the parties offer significantly different accounts of Plaintiff's arrest. In light of the numerous factual disputes about Plaintiff's actions, the Court cannot conclude as a matter of law that Plaintiff posed a danger to himself or others. Indeed, Plaintiff vehemently contests Defendants' account of what transpired in his apartment. In his deposition, Plaintiff testified that he was "startled" when officers knocked on his door, but that he responded. (Sohn Decl., Ex. J at 43:7-44:25.) Moreover, while Defendants assert that Plaintiff was "incoherent," Plaintiff disputes this and states that he "wasn't arguing with [the officers]" and that he was merely speaking Cantonese. (*Id.* at 85:1-19.) Officer Henry even acknowledged in her own deposition that she could not understand Plaintiff because he was "maybe speaking a different language. Maybe Chinese." (*Id.*, Ex. K at 28:21-22.) Perhaps most importantly, while the court in *Roffman* emphasized the danger of the potential fire, Defendants here have identified no comparable danger.[2] Defendants cite the water leak as a "fire hazard," but they say nothing

---

[2] In their reply brief, Defendants argue for the first time that Defendants had probable cause due to Plaintiff's obstruction of governmental administration by refusing to open the door and attempting to block firefighters' entry and his violation of the New York Administrative Code by interfering with the firefighters' inspection of his apartment. (DEfs. Reply at 3-4.) It is well established, however, that a court should not "consider arguments that are raised for the first time in a reply brief." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 n. 5 (2d Cir. 2006); *see ABN Amro Verzekeringen BV v. Geologistics Ams., Inc.*, 485 F.3d 85, 97 n.12 (2d Cir. 2007) ("We decline to consider an argument raised for the first time in a reply brief."); *Patterson v. Balsamico*, 440 F.3d 104, 113 n. 5 (2d Cir. 2006)

about its extent nor do they explain how it posed a danger, other than the general statement that "[b]ased on his experience as a firefighter and fire lieutenant, Lt. Brady understood that a water leak could pose a fire hazard as it could touch the electrical wiring in the apartment." (Defs. 56.1 ¶ 15; *see also* Defs. Mem. at 7.)  Moreover, Defendants' attempt to analogize this case to *Roffman* by emphasizing the cluttered state of the apartment, which, they say, created an "even more serious fire hazard," misses the mark. (*Id.*)  Obviously, a cluttered apartment poses a greater hazard in the context of a report of a fire than it does with respect to a water leak, and it simply cannot be that a messy apartment alone provides probable cause to forcibly hospitalize a person.  In addition, Defendants concede that they never even entered Plaintiff's apartment and could not gauge for themselves the extent of the water leak (Sohn Decl., Ex. J at 54:20-22; *id.*, Ex. K at 27:24), a fact which further calls into question their effort to use the water leak as a basis for their confinement of Plaintiff.  Taken together, the parties' differing accounts create numerous issues of fact as to whether Defendants had reasonable grounds to believe that Plaintiff was a danger to himself or others.  As such, the Court must deny Defendants' motion for summary judgment on Plaintiff's false arrest claim on this basis.

### B. Qualified Immunity

Defendants next argue that they are entitled to qualified immunity.  Qualified immunity shields a government officer from liability under Section 1983 "if (1) his conduct does not violate a clearly established constitutional right, or (2) it was 'objectively reasonable' for the officer to believe that his conduct did not violate a clearly established right." *Hartline v. Gallo*, 546 F.3d

---

("This Court generally will not consider arguments raised for the first time in a reply brief.").  Moreover, even if the Court were to consider these arguments, they would still fail in light of the numerous factual disputes in the parties' accounts of what transpired.

95, 102 (2d Cir. 2008); *see Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011); *Farid v. Ellen*, 593 F.3d 233, 244 (2d Cir. 2010). Specifically, "police officers may enter a dwelling without a warrant to render . . . assistance to a person whom they reasonably believe to be in distress." *Tierney v. Davidson*, 133 F.3d 189, 196 (2d Cir. 1998) (internal quotation marks omitted). "For Fourth Amendment purposes, the reasonableness of an officer's belief must be assessed in light of the particular circumstances confronting the officer at the time." *Kerman v. City of New York*, 261 F.3d 229, 235 (2d Cir. 2001).

The Second Circuit's decision in *Kerman* is instructive on the issue of qualified immunity. In *Kerman*, the Second Circuit refused to grant qualified immunity to officers on summary judgment for a forced hospitalization based on the conclusion that a fact-finder crediting the plaintiff's version of the facts "could well find that the police acted outside the bounds of . . . the qualified immunity standards of objective reasonableness." 261 F.3d at 241. There, the police officers argued for qualified immunity after forcibly hospitalizing the plaintiff based on their account that the plaintiff was "ranting, screaming and acting unstable" and that his apartment was like "an Augean stable." *Id.* The plaintiff, on the other hand, stated "that he was calm during most of his encounter with the police and that his apartment was, at worst, untidy." *Id.* While the court recognized that "police officers are often forced to make spot judgments about a person's mental health and should be entitled to reasonable leeway in those situations," it nonetheless concluded that on summary judgment it had to credit plaintiff's story and, "given the disputed accounts, a jury should decide what transpired between the officers and [the plaintiff]." *Id.*

Here, as in *Kerman*, the parties offer strikingly different accounts of the officers' intervention. As discussed above, while Defendants focus on Plaintiff's refusal to answer the door, his aggressiveness and assault on police officers, and his disheveled appearance, cluttered

9

apartment, and incoherent responses, Plaintiff attributes his conduct to his lack of English skills and the surprise and confusion caused by the officers' early-morning intrusion into his apartment. Given these disputed facts and based on the standard articulated in *Kerman*, the Court concludes that a jury must determine what transpired between the officers and Plaintiff before the Court can make a determination as to qualified immunity. Crediting Plaintiff's account of the events, as it must on a motion for summary judgement, the Court simply cannot conclude as a matter of law that it was objectively reasonable for the officers to forcibly hospitalize Plaintiff.

It bears noting that this case is not like *Anthony v. City of New York*, on which Defendants rely. 339 F.3d 129 (2d Cir. 2003). In *Anthony*, police officers responded to a 911 call in which "a female caller reported that she was being attacked by a man with a knife and gun." *Id.* at 131. There, the court emphasized that "the call came from the same location to which the police responded, and more importantly, the caller described an immediate and deadly threat of harm to which she herself was being exposed at that location." *Id.* at 136. Although the court declined to determine whether the officers had probable cause to seize the plaintiff given those circumstances, it nonetheless granted the officers qualified immunity, resting its decision on the fact that the officers "were responding to the order of a superior officer." *Id.* at 138 (quoting *Bilida v. McCleod*, 211 F.3d 166, 174-75 (1st Cir. 2000) ("Plausible instructions from a superior or fellow officer support qualified immunity where, viewed objectively in light of the surrounding circumstances, they could lead a reasonable officer to conclude that the necessary legal justification for his actions exists (*e.g.* a warrant, probable cause, exigent circumstances).")). *Anthony* is simply not relevant here, since in this case, the officers received no instruction from a superior to forcibly hospitalize Plaintiff and, as discussed above, the parties offer dramatically conflicting accounts as to whether Plaintiff did in fact pose a danger to himself or others.

The Court thus denies Defendants' motion for summary judgment on the false arrest claim on the basis of qualified immunity.

IV. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED THAT Defendants' motion for partial summary judgment on Plaintiff's false arrest claim is DENIED. The Clerk of the Court is respectfully directed to terminate the motion pending at docket number 31.

IT IS FURTHER ORDERED THAT a trial shall commence on October 17, 2016 at 9:30 a.m. in Courtroom 905 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York.

IT IS FURTHER ORDERED THAT, by September 9, 2016, the parties shall jointly submit a Proposed Pretrial Order that includes, in separately numbered paragraphs, the information required by Federal Rule of Civil Procedure 26(a)(3), as well as the following information:

i. The full caption of the action;

ii. The names, addresses (including firm names), and telephone and fax numbers of trial counsel;

iii. A brief statement by Plaintiffs as to the basis of subject-matter jurisdiction and a brief statement by Defendant as to the presence or absence of subject-matter jurisdiction, each of which shall include citations to all authority relied on and relevant facts as to citizenship and jurisdictional amount;

iv. A brief summary by each party of the claims and defenses that the party has asserted that remain to be tried – without recital of evidentiary matters but with citations to all statutes on which the party has relied – and of the claims and defenses that the party has previously asserted that are not to be tried;

  v.  A statement by each party as to whether the case is to be tried with or without a jury, and the number of trial days needed;

  vi.  A statement as to whether all parties have consented to a trial of the case by a magistrate judge (without identifying which party or parties have or have not so consented);

  vii.  Any stipulations of fact or law that have been agreed upon by the parties;

  viii.  A statement by each party as to the witnesses whose testimony is to be offered in the party's case-in-chief, indicating whether such witnesses will testify in person or by deposition;

  ix.  A designation by each party of deposition testimony to be offered in the party's case-in-chief, with any cross-designations and objections by any other party;

  x.  A list by each party of exhibits to be offered in the party's case-in-chief, with an indication as to whether any party objects to any such exhibits and a brief statement of the nature of the objection (*e.g.*, "relevance," "authenticity," "hearsay"); and

  xi.  A statement of whether the parties consent to less than a unanimous verdict.

IT IS FURTHER ORDERED THAT the parties shall jointly file with the Proposed Pretrial Order the following submissions:

  i.  Proposed *voir dire* questions – a copy of which shall be emailed to chambers in a Word version – which shall include the text of any requested question and should consist of a single document and note any areas of disagreement between the parties;

    ii.      A proposed verdict form – a copy of which shall be emailed to chambers in a Word version – which should consist of a single document and note any areas of disagreement between the parties;

    iii.     Proposed jury instructions – a copy of which shall be emailed to chambers in a Word version – which shall include the text of any requested instruction and a citation, if relevant, to the authority from which such instruction derives, and which should consist of a single document and note any areas of disagreement between the parties;

    iv.     Motions addressing any evidentiary or other issues that should be resolved *in limine*; and

    v.      If a party believes that it would be useful, a pretrial memorandum, not to exceed 10 pages.

IT IS FURTHER ORDERED THAT, should the parties choose a bench trial instead, they shall jointly file with the Proposed Pretrial Order the following submissions:

    i.       Proposed findings of fact and conclusions of law – a copy of which shall be emailed to chambers in a Word version – which should be detailed and note any areas of disagreement between the parties and, for each proposed factual finding, shall include citations to the record;

    ii.      Motions addressing any evidentiary or other issues that should be resolved *in limine*; and

    iii.     If a party believes that it would be useful, a pretrial memorandum, not to exceed 10 pages.

IT IS FURTHER ORDERED THAT, in the event of a bench trial, at the time that the

Proposed Pretrial Order is filed, each party shall serve (but not file) the following submissions and shall submit two courtesy copies of these submissions to chambers:

    i.    Affidavits – the originals of which shall be marked as exhibits at trial – constituting the direct testimony of each trial witness, except for testimony of an adverse party, a person whose attendance must be compelled by subpoena, or a person for whom a party has requested and from whom the Court has agreed to hear direct testimony during the trial;

    ii.    All deposition excerpts that will be offered as substantive evidence and, for each, a one-page synopsis of those excerpts (with citations); and

    iii.    All documentary evidence, which shall be compiled in tabbed binders containing all documentary exhibits organized by exhibit number. If the number of exhibits is so voluminous as to make compliance with this rule impractical, the parties shall contact the Court for guidance.

IT IS FURTHER ORDERED THAT, in the event of a bench trial, within three business days after the parties submit the above-mentioned affidavits, each party shall submit a list of all affiants whom the party's counsel intends to cross-examine at trial. IT IS FURTHER ORDERED THAT only those witnesses who will be cross-examined need appear at trial.

IT IS FURTHER ORDERED THAT, within one week of the filing of the Proposed Pretrial Order, any party may file the following documents:

    i.    Oppositions to any motions *in limine*; and

    ii.    Oppositions to any legal arguments set forth in a pretrial memorandum.

Finally, IT IS FURTHER ORDERED THAT the parties shall appear for a final pretrial conference on October 6, 2016 at 11 a.m. to discuss the trial, which, as ordered above, will commence on the morning of October 17, 2016.

SO ORDERED.

Dated:      August 18, 2016
               New York, New York

*[signature]*

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8·18·16