```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
```

JOSEPH QUON,

                                      PLAINTIFF,        **PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

-AGAINST-       14-CV-9909 (RJS)

POLICE OFFICER SHAREKA HENRY and POLICE
OFFICER JOI GRANT, individually, and in their capacity
as a member of the New York City Police Department.

                                     DEFENDANTS

```
------------------------------------------------------------------------x
```

### Plaintiff's Proposed Findings of Fact:

1. Plaintiff resides at 342 West 48th Street, Apartment 4FW, in New York, New York and has lived there for over twenty years (Plaintiff's transcript p28: 18-22).

2. On the morning of September 26, 2014, Officer Joi Grant and Officer Shareka Henry, along with a number of New York City Firefighters, knocked on Plaintiff's door and requested entry in order to assess an alleged leak (id. p43-44).

3. Plaintiff was unaware of any leak at that time (id. p47: 1-2).

4. Plaintiff spoke to the officers and firefighters and declined to open the door (id. p44: 2-7).

5. It was later discovered that the leak was coming from above Plaintiff's apartment (id. p47: 4-24).

6. The leak in Plaintiff's apartment did not constitute an emergency situation (id. p47: 4-24).

7. The officers did not have a warrant to enter Plaintiff's home (Officer Grant's transcript p31)

8. The firefighters and officers removed the door from its hinges in order to gain access to Plaintiff's home (id. p31).

9. Plaintiff was dressed in only his underwear because it was early in the morning, he had just been woken by loud banging on his door, and he did not have the opportunity to dress himself (Plaintiff's transcript, p64: 2-8; p49: 14-18).

10. Plaintiff gestured with his hands open in front of his chest to prevent entry into the apartment (id. 63:22-25; p64: 21-25).

11. Defendants had no reason to believe that Plaintiff was a danger to himself or others (id. 63:22-25; p64: 21-25).

12. Plaintiff had no history of mental illness or psychological disorder (id: 104: 9-12).

13. Officer Henry forcefully dragged Plaintiff out of his apartment; bent back his fingers; twisted his wrists and elbows; kneed him across the back of his neck; choked him; and inflicted gouge marks across his back (id. 68: 7-11; 70-71:12-20).

14. Plaintiff was in pain constantly (id. 83:21).

15. Plaintiff did not resist arrest (id. p66: 6-8).

16. Officer Henry handcuffed Plaintiff and the handcuffs were excessively tight (id. p84: 18-21, 109: 4-16).

17. Plaintiff consistently requested that the handcuffs be loosened, but the officers refused his requests (id. p84: 18-21, 109: 4-16).

18. There were red marks on Plaintiff's wrists (Officer Grant transcript: 63:8-15).

19. Plaintiff was not free to leave (Officer Henry transcript, p33: 16-18).

20. Neither Officer Henry nor Officer Grant ever set foot inside Plaintiff's apartment (Officer Henry transcript p27: 24; Officer Grant transcript p.54: 20-22).

21. Officer Henry called an ambulance for Plaintiff (Officer Henry p.32: 20-21).

22. Plaintiff was taken to St. Luke's Roosevelt Hospital (Plaintiff's exhibit 1: Medical records from St Luke's hospital).

23. The handcuffs were removed after Plaintiff arrived at the hospital (Officer Grant Transcript p53).

24. The officers then left the hospital (Officer Grant Transcript p53).

25. Plaintiff suffered numerous bruises and abrasion to his shoulders and back; wrist pain; pain in his neck; an abrasion to his left toe; an injury to his elbow; joint pain; joint swelling; back pain; a small abrasion to his scalp; and a 1.5 inch wide by 10 inch long abrasion/bruise to his mid-back (Plaintiff's exhibit 1: Medical records from St Luke's hospital; Plaintiff's Exhibit 2: photographs).

26. The cuts and abrasions left scabs and scar marks that took months to heal (Plaintiff transcript p101: 1-2.)

27. Plaintiff suffered pain in his hands and wrists, which persisted for a number of months (id. p97: 14-16).

28. No charges were brought against Plaintiff, and Plaintiff was not taken to a police precinct or lodged at Central Booking (Officer Grant Transcript, p.54: 16-19; Officer Henry transcript p. 40: 6-11)

**Defendants' Proposed Findings of Fact:**

1. Plaintiff resides at 342 West 48th Street, Apartment 4FW, in New York, New York. Deposition of Plaintiff, 4:9-10; 16:22-23.

2. On September 26, 2014, a tenant from apartment 2FW, Marina Hernandez, called the fire department to complain of a water leak. Deposition of Pedro Moses Toribio Pena, 8:13-22.

3. New York City Fire Department ("FDNY") Lieutenant Patrick Brady and other New York City Firefighters assigned to Engine 11, Ladder 4 responded to the call. Declaration of FDNY Lieutenant Patrick Brady, ¶ 3.

4. Lt. Brady determined that the source of the leak was coming from plaintiff's apartment, Apt. 4FW. Brady Decl., ¶ 4.

5. Lt. Brady knocked on the door of Apt. 4FW and requested entry in order to assess the leak. Brady Decl., ¶ 4.

6. Plaintiff refused to open the door despite numerous requests. Brady Decl., ¶ 5.

7. Lt. Brady called the New York City Police Department for assistance. Brady Decl., ¶ 5.

8. Officer Joi Grant and Officer Shareka Henry responded to 342 West 48th Street. Deposition of Defendant Officer Joi Grant, 13:14-16; Deposition of Defendant Officer Shareka Henry, 21:13-16.

9. The FDNY Lieutenant explained to Officers Grant and Henry that the superintendent had called regarding a water leak and the tenant would not open the door. Grant Deposition, 22:23-23:8; Henry Deposition 15:4-15.

10. Based on his experience as a firefighter and fire lieutenant, Lt. Brady understood that a water leak could pose a fire hazard as it could touch the electrical wiring in the apartment. As such, immediate entry was needed. Brady Decl., ¶ 6.

11. Lt. Brady instructed the Ladder 4 firefighters to begin removing the door from its hinges in order to gain access. Brady Decl., ¶ 7.

12. When the door was removed, Lt. Brady observed plaintiff swinging a long metal object. Brady Decl., ¶ 8.

13. Plaintiff swung the metal bar in front of him. Henry Deposition, 26:6-25.

14. Plaintiff had no clothes on at that time except for underwear and appeared disheveled. Brady Decl., ¶ 8; Grant Deposition, 39:3-4.

15. Plaintiff refused to cooperate and was not speaking intelligibly and was aggressive. Brady Decl., ¶ 8.

16. When plaintiff first came out into the hallway, he was "breathing very heavily, very suffocated." Toribio Deposition, 18:10-15.

17. Plaintiff appeared very agitated, moved his arms, had saliva coming out of his mouth, and was furious. Toribio Deposition, 18: 14-20.

18. Plaintiff gestured with his hands to prevent entry into the apartment; he raised his hands up and open in front of his chest. Toribio Deposition, 62:15-17; 20-22.

19. Plaintiff pushed one of the firefighters and Officer Grant. Brady Decl., ¶ 9.

20. Officer Henry handcuffed plaintiff. Henry Deposition, 27:5-10.

21. Plaintiff was resistant to being handcuffed. Brady Decl., ¶ 9.

22. The inside of apartment 4FW was "extremely cluttered." Brady Decl., ¶ 11; Defendants' Exhibit G.

23. The extent of the "clutter" in the apartment was such that in the event of a spark or fire, it would be difficult and dangerous to access the source of the fire to extinguish it. Brady Decl., ¶ 11.

24. Officer Grant asked plaintiff for his name and today's date, and he gave nonsensical answers that were unrelated to the questions presented. Grant Deposition, 44:14-45:19; 47:12-17.

25. Based on plaintiff's answers, it appeared to Officer Grant that plaintiff did not understand what was going on. Grant Deposition, 48:8-13.

26. Officer Grant believed it was unsafe to let plaintiff back into his apartment because he was incoherent and had not answered her questions logically. Grant Deposition, 51:6-9.

27. Officer Henry called an ambulance for plaintiff because he appeared to be delusional and she believed he posed a threat to himself or to others. Henry Deposition, 32:18-21; 33:11-15.

28. EMTs Preston Sealey and Jonathan Rothman responded to the scene. Defendants' Exhibit C.

29. Plaintiff told the EMTs that he fell causing a bruise across his upper back. Defendants' Exhibit C.

30. The emergency call was categorized as one for an EDP, or psychiatric patient. Defendants' Exhibit C.

31. Plaintiff told EMTs he was stressed and paranoid. Defendants' Exhibit C.

32. EMTs Sealey and Rothman transported plaintiff to St. Luke's Roosevelt Hospital. Defendants' Exhibit C.

33. At St. Luke's, Officer Henry removed the handcuffs that were on plaintiff. Henry Deposition, 103:14-15, 38:17-19.

34. Officer Henry then left the hospital. Henry Deposition, 40:6-8.

35. No charges were brought against plaintiff, and plaintiff was not taken to a police precinct or lodge at Central Booking. Henry Deposition, 40:9-11; Ex. F, 99:17-20.

36. Plaintiff left the hospital at some point on September 26, 2014. Quon Deposition, 100:2-3.

37. The owner of plaintiff's building, 342 West 48th Street Housing Development Fund Corporation, commenced a residential holdover proceeding due to the unsanitary and dangerously cluttered conditions of his apartment. Defendants' Exhibit E.

38. By stipulation of settlement dated June 5, 2015, plaintiff agreed to allow inspection of his apartment to ensure that the apartment was kept in a clean, clutter-free condition. Defendants' Exhibit F.

39. Plaintiff does not dispute that the condition of his apartment posed a fire hazard. Quon Deposition, 115:5-7.

**Areas of Factual Disagreement Between the Parties:**

1. The parties disagree as to the source and cause of the leak in Plaintiff's apartment.
2. The parties disagree as to Plaintiff's demeanor toward the firefighters.
3. The parties disagree as to the sum and substance of any conversation between Plaintiff and the firefighters.

4. The parties disagree as to Plaintiff's demeanor with the police officers prior to the time that his door was removed.

5. The parties disagree as to whether or not Plaintiff came out of his apartment swinging a metal rod.

6. The parties disagree as to whether or not Plaintiff acted in a way consistent with being categorized as an EDP.

7. The parties disagree as to whether or not the Defendant Henry used force against Plaintiff.

8. The parties disagree as to the causation of any injury Plaintiff presented with on September 26, 2014.

9. The parties disagree as to the sum and substance of any conversation between Plaintiff and the EMTs.

## Plaintiff's Proposed Conclusions of Law:

10. Defendants did not have probable cause to arrest Mr. Quon.

11. Defendant Henry used excessive and unreasonable force in effecting the arrest of Mr. Quon.

12. Defend Henry handcuffed Mr. Quon with excessively tight handcuffs and unreasonably refused to loosen the handcuffs when requested to do so by Mr. Quon

## Defendants' Proposed Conclusions of Law:

*False Arrest*:

To sustain a claim for false arrest, a plaintiff must show that "'(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not

consent to the confinement, and (4) the confinement was not otherwise privileged."' Savino v. City of New York, 331 F.3d 63, 75 (2d Cir. 2003) (quoting Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994)); Broughton v. State, 37 N.Y.2d 451, 373 N.Y.S.2d 87, 93 (1975).  In this case, plaintiff cannot show an intentional confinement without justification.  See, e.g., Covington v. City of New York, 171 F.3d 117, 122 (2d Cir. 1999).  Plaintiff's Fourth Amendment right to be free of seizures is not implicated in emergency situations wherein the role of the police is to render aid rather than to seize evidence or to make an arrest.  Rubio v. City of New York, No. 03 Civ. 1349 (SJ) (KAM), 2005 U.S. Dist. LEXIS 44256, at *12 (E.D.N.Y. Apr. 22, 2005); People v. Molnar, 98 N.Y.2d 328, 746 N.Y.S.2d 673, 676 (2002) (citing Mincey v. Arizona, 437 U.S. 385, 392 (1978)); People v. Mitchell, 39 N.Y.2d 173, 383 N.Y.S.2d 246, 248 (1976).

New York State law recognizes a police officer's affirmative obligation to assist persons whom they reasonably believe to be in need.  See, e.g., Rubio, 2005 U.S. Dist. LEXIS 44256, at *12; People v. Mitchell, 39 N.Y.2d 173, 383 N.Y.S.2d 246, 248 (1976) (affirming denial of motion to suppress); People v. De Bour, 40 N.Y.2d 210, 386 N.Y.S.2d 375, 381-82 (1976) (affirming denial of motion to suppress and conviction; recognizing the "public service aspect of the police function" and the "multiplicity and complexity of tasks assumed by the police").

Here, it is undisputed that plaintiff was not subjected to a custodial arrest, or taken to a police precinct, central booking, or arraignment.  Plaintiff was transported to a hospital for a medical evaluation and the handcuffs were removed as soon as he was under the nurse's care.  Under Mental Hygiene Law § 9.41, police are entitled to take necessary action to assist a person in need of mental health treatment, and there was no false arrest.  In light of difficult decisions implicated where plaintiff may have been in need of medical or psychological evaluation or treatment, police could reasonably have erred on the side of caution and decided to transport plaintiff to a hospital.  Henry

and Grant, police officers, were entitled to defer to the judgment of both EMTs and the medical staff at St. Luke's Hospital, who have the medical expertise required to evaluate plaintiff's physical and mental condition.

Plaintiff had a water leak in his apartment which Lt. Brady informed them was a fire hazard. The threat was so immediate that Lt. Brady deemed it necessary to remove the door from its hinges to address the problem. Once the door was opened, Lt. Brady saw there was an even more serious fire hazard: the entire apartment was cluttered to the extent that it obscured entry into the apartment. Not only had plaintiff refused the firefighters' and police officers' numerous requests to open the door prior to the door being removed, but once the doorway was clear, plaintiff swung a metal pole, was agitated and angry. He continued to block entry by telling the firefighters to "Stop" and barred access by raising his hands. Plaintiff came out of the apartment swinging a metal rod in an effort to attack the officers. Moreover, plaintiff stepped out in only his underwear, even though he was aware that there were several people outside, and even though he had ample opportunity to cloth himself during the period of time that the firefighters and police officers stood in the hallway requesting that he open the door. Further, plaintiff's response to Grant's basic questions for his name and the date were unintelligible. Finally, plaintiff was alone in the apartment, with no one to take care of him after the responders left. Plaintiff's continued refusal to allow entry, the presence of an immediate fire hazard in the apartment, his aggressive and unintelligible manner, and his clothing, all led officers Grant and Henry to believe that they should take action. It was reasonable for them, under these circumstances, to err on the side of caution and request EMS to the scene for an evaluation. Further, upon arrival, plaintiff told the EMS personnel that he was "stressed and paranoid" and the EMS was of the opinion that he had a behavioral disorder and treated him as an EDP.

A.     *Qualified Immunity as to False Arrest*

"[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Stanton v. Sims, 134 S. Ct. 3, 4-5 (2013) (quoting Pearson v. Callahan, 555 U.S. 223, 231, (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982))). Qualified immunity serves an important policy purpose: "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.' Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2085 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). In Mullenix v. Luna, No. 14-1143, 2015 U.S. LEXIS 7160 (Nov. 9, 2015), the Supreme Court found that a state trooper who decided to shoot at a plaintiff's vehicle in an effort to end a high speed chase was entitled to qualified immunity. The Court noted that the proper inquiry was "whether the violative nature of *particular* conduct is clearly established..." and stated that the inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Even where a right is well established, an official may invoke this defense if it was objectively reasonable for him to believe that his acts did not violate that right. See Lee v. Sandberg, 136 F.3d 94, 102 (2d Cir. 1997) (troopers' actions in arresting husband based on wife's complaint were objectively reasonable); Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995) (police may be shielded from liability for on-the-spot judgments); cf. Malley v. Briggs, 475 U.S. 335, 345-46 (1986) (officers not personally liable if they mistakenly believe their actions are lawful). An officer has acted in an objectively reasonable manner and has "arguable probable cause" unless "no officer of reasonable

competence could have made the same choice in similar consequences." Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000). As an entitlement not to face the burdens of litigation, this defense should be resolved at the earliest possible stage. Saucier v. Katz, 533 U.S. 194, 201 (2001).

Qualified immunity is available for claims for false arrest, where there was arguable probable cause for an arrest or where it was objectively reasonable for the officer to believe that there was probable cause. Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004); Savino, 331 F.3d at 78. Here, even assuming that a Fourth Amendment seizure had taken place, police are entitled to the benefit of qualified immunity for actions taken to render aid in exigent circumstances. See, e.g., Anthony v. City of New York, 339 F.3d 129, 138 (2d Cir. 2003), aff'g, No. 00 Civ. 4688 (DLC), 2001 U.S. Dist. LEXIS 8923 at *20 (S.D.N.Y. July 2, 2001) (holding that police were immune from suit when they responded to a 911 call from a female reporting that she was being attacked with a gun, found a woman at the scene who appeared to be mentally impaired and in need of assistance, and removed her to a hospital); see also Koch v. Town of Brattleboro, 287 F.3d 162, 169 (2d Cir. 2002) (applying specifically-recognized exception to warrant requirement for entry pursuant to "exigent circumstances," such as to render emergency aid and assistance to a person who is reasonably believed to be in distress). As in Anthony, defendants here may have been accused of "callous indifference" to plaintiff's needs had they failed to assist him. See Anthony, 2001 U.S. Dist. LEXIS 8923 at *20. Thus, they reasonably concluded that they were justified in obtaining medical assistance for plaintiff and are entitled to qualified immunity.

Similarly, the court in Vazquez v. Marciano, 169 F. Supp. 2d 248, 253 (S.D.N.Y. 2001), the court held that the decision of police to obtain treatment for a car accident victim was objectively reasonable and entitled the officers to qualified immunity. In Vazquez, plaintiff filed suit pursuant to

§ 1983, contending that a police officer had violated his civil rights by forcibly transporting him to a hospital over his refusals after he was in a car accident while intoxicated with marijuana, alcohol, and cocaine. The court recognized that "[a] reasonable police officer not only could have, but would have, concluded that plaintiff could have been seriously injured in the accident and was therefore in need of medical assistance." Id. The court also recognized that the defendant officers would likely have been sued had they failed to render aid. Id.

The Second Circuit has recognized that "[Officials] are often forced to make spot judgments about a person's mental health and should be entitled to reasonable leeway in those situations." Kerman v. City of New York, 261 F.3d 229, 241 (2d. Cir. 2001)("Kerman II"). Here, based on Lt. Brady's experience as a firefighter and as a Lieutenant, he deemed that the water leak presented an immediate fire hazard, and informed the defendants of this fact. The water leak was serious enough to require close to $500 worth of repairs. Moreover, the extreme clutter in the apartment posed a dangerous condition as well. See, e.g. Zipper v. Haroldon Ct. Condominium, 39 A.D.3d 325 (N.Y. App. Div. 1st Dep't 2007)(granting condominium's cross claim seeking eviction of tenant where apartment was dangerously cluttered with furnishings, boxes, and debris, and finding the disinterested testimony of firefighters credible). The building owner commenced a residential holdover proceeding after the incident, citing unsanitary and hazardous conditions and a repeated pattern of refusing to allow entry for inspections and repairs. Even plaintiff does not dispute that the condition of his apartment posed a hazard. Furthermore, plaintiff attacked the officers with a metal rod, was in only his underwear, refused to open the door, and even after the door was removed, continued to bar entry into his apartment. The EMTs made an independent assessment in which they found that plaintiff was emotionally unstable and classified him as an EDP. On these facts, at minimum, Officers Henry and Grant

had reasonable probable cause to briefly place plaintiff in handcuffs and to call EMS to transport plaintiff to a hospital. Thus, defendants' conduct cannot be deemed objectively unreasonable and thus are entitled to qualified immunity.

*Excessive Force*:

As an initial matter, plaintiff brings an excessive force claim against defendant Officer Henry only. Plaintiff's excessive force claim fails because (1) the only force the defendant used was in effectuating plaintiff's arrest; and (2) any alleged injuries sustained by plaintiff cannot be attributed to the conduct of Officer Henry.

A.   *The Only Force the Defendant Used Was in Effectuating Plaintiff's Arrest*

Claims that law enforcement officers have used excessive force in the course of an arrest, investigatory stop, or other seizure of a free citizen are analyzed according to an objective reasonableness standard under the Fourth Amendment Graham v. Connor, 490 U.S. 386, 395 (1989). The "reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 396. Minor scrapes, bumps or bruises potentially could occur, often unintended, during any arrest or stop, and an officer cannot be held liable for every such incident. (Adapted from the instructions given by Hon. Judge Barbara S. Jones in Pope v. Buttner, 10 CV 4118 (S.D.N.Y. – delivered March 7, 2012); and instructions given by Hon. Judge Andrew J. Peck in Tsesarskaya v. City of New York, *et al.,* 11 CV 4897 (S.D.N.Y. – delivered on June 13, 2012).

In addition, the Supreme Court has emphasized that allowance must be made "for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." Id. at 397-98. Thus, a use of force is excessive only "if it is clear to a

14

reasonable police officer that such conduct is unlawful in a given situation (with due recognition of the fact that police officers often face split-second decisions)." Wilder v. City of Amityville, 288 F. Supp. 2d 341, 344 (E.D.N.Y. 2003). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Graham v. Connor, 490 U.S. 386, 397 (1989) (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)). Accordingly, "a *de minimis* use of force will rarely suffice to state a Constitutional claim." Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993).

Further, a police officer is permitted to use force to subdue a resisting person in order to effectuate an arrest. Sullivan v. Gagnier, 225 F.3d 161, 165-66 (2d Cir. 2000); Salim v. Proulx, 93 F.3d 86, 91 (2d Cir. 1996). Specifically, officers are permitted to use force to free an arrestee's arms to bring his or her arms behind his or her back for handcuffing where an officer is prevented from doing so. See, e.g., Husbands v. City of New York, 05 Civ. 9252 (NRB), 2007 U.S. Dist. LEXIS 61042, at *35-36 (S.D.N.Y. Aug. 16, 2007) (dismissing excessive force claim where punch by police officer was delivered "so as to free …[suspect's] arms" for handcuffing); Hardy v. B.C. Plante, 06 CV 687 (LEK) (RFT), 2009 U.S. Dist. LEXIS 7779, at *18 (S.D.N.Y. Mar. 3, 2011) (dismissing excessive force claim on qualified immunity grounds where officers used punches, taser, and arm-twisting in order to arrest resisting plaintiff).

Here, defendants' alleged use of force on plaintiff – in order to subdue and arrest him after he attacked the officers and was deemed to be an EDP – was justified. Plaintiff exited the door of his apartment swinging a long metal object. Brady Decl., ¶ 8; Henry Deposition, 26:6-25. Plaintiff was speaking unintelligibly and acted aggressively. Brady Decl., ¶ 8. Plaintiff was flailing his arms and resisting arrest. Toribio Deposition, 18: 14-20. When the door was removed, Lt. Brady observed plaintiff swinging a long metal object. Brady Decl., ¶ 8. Based on

the foregoing, Officer Henry was entitled to effectuate an arrest of plaintiff, based on his attack of the officers and the firemen, and based on his apparent mental condition. Plaintiff resisted arrest. As such, if Officer Henry used any force, she was entitled to do so to effectuate plaintiff's arrest. Therefore, any alleged force used by Officer Henry in handcuffing plaintiff and effectuating his arrest was justified.

B.      *Plaintiff Cannot Prove Causation As to Any Alleged Injuries Sustained by Plaintiff Nor Can They be Attributed to the Conduct of Officer Henry*

Plaintiff alleges that he suffered physical injuries as a result of the officer's alleged use of force. The scant injuries that are supported by the medical records are *de minimis* and insufficient to support a claim for excessive force. Moreover, plaintiff has failed to show that Officer Henry was the cause of any injury he sustained.

A plaintiff must establish "through evidence, that the 'alleged use of force is objectively sufficiently serious or harmful enough to be actionable.'" Rincon v. City of New York, No. 03 Civ. 8276, 2005 U.S. Dist. LEXIS 4335, at *11 (S.D.N.Y. Mar. 21, 2005) (quoting United States v. Walsh, 194 F.3d 37, 50 (2d Cir. 1999)).

In the instant matter, plaintiff's injuries are limited to bruising. Although plaintiff claims that the alleged force used was the bending of his hand, the pulling of his elbow, and his being "stamped" by the officer's foot while she handcuffed him, he has minimal evidence of any injuries. According to the EMT's Prehospital Care Summary Report, at the time plaintiff presented to the ambulance, his injuries were limited to bruising to his upper back. Exhibit C. When plaintiff was evaluated at St. Luke's Hospital, the only injuries he presented with were scratches to his back and some swelling to his wrists. Specifically, the doctor noted that he had multiple abrasions, bruising, and click of elbow (plaintiff's elbow was further evaluated and no fracture or dislocation was found). Plaintiff has shown no evidence of seeking further medical

16

treatment for these injuries. These limited injuries are within the definition of a *de minimis* injury, and as such, are insufficient to state a constitutional claim. Further, these injuries were clearly sustained while plaintiff's arrest was being effectuated. As such, plaintiff has failed to make out an excessive force claim.

Furthermore, plaintiff has not established an excessive force claim against Officer Henry. As an initial matter, at his deposition, plaintiff identified the officer who used force against him as Officer "Wilson." Further, there were numerous individuals in the hallway at the time that plaintiff rushed out of his apartment with the metal rod. In fact, plaintiff pushed one of the firefighters on his way out of the apartment. Further, plaintiff admitted at his deposition that firefighters were also touching him while Officer Henry attempted to arrest him. (Pl. Deposition, 67:13-17). In his testimony, plaintiff further seems confused as to what force, if any, Officer Henry used against him. Indeed, plaintiff stated that he had no memory of what injuries Officer Henry caused, and that the only conduct he could attribute to Officer Henry was her handcuffing him. Pl. Deposition, 90:15-93:5). Based on the foregoing, plaintiff has failed to show that any injuries he sustained were caused by the conduct of Officer Henry. As such, he has failed as a matter of law to make out his excessive force claim against her.

C. *Qualified Immunity as to Excessive Force*

Even if the Court were to find that defendant Henry used excessive force against plaintiff, she would still be entitled to the defense of qualified immunity. In the instant case, plaintiff admits he was not obeying the officers' orders. He had refused to open his door to firefighters despite the existence of a dangerous condition within his apartment. When the door of the apartment was taken off its hinges, he rushed out of the apartment with a metal rod attempting to attack the officers. Defendant Henry therefore attempted to handcuff him. Any force used during the arrest was reasonable under the above circumstances. See Beckles v. City of New York, No.

17

11-1226-cv, 2012 U.S. App. LEXIS 17433, at *5, 2012 WL 3553388 (2d Cir. Aug. 20, 2012) (affirming grant of summary judgment for defendants on qualified immunity grounds where officers handcuffed plaintiff, causing a shoulder injury, where plaintiff was uncooperative and had a pre-existing non-obvious shoulder condition); Ortiz, et al., v. Village of Monticello, et al., No. 06 Civ. 2208 (ER), 2012 U.S. Dist. LEXIS 158428, at *11 (S.D.N.Y. Nov. 12, 2012) (granting qualified immunity where plaintiff failed to follow orders to lay down on ground and officers allegedly twisted his hands behind his back and slammed him to the ground, causing a shoulder injury); Vasquez v. Klie, No. 03 Civ. 3905 (LAP), 2012 U.S. Dist. LEXIS 47312, at *22 (S.D.N.Y. Mar. 30, 2012) (granting qualified immunity and noting that "defendant's pulling on Plaintiff's handcuffed arms to raise him to his feet . . . 'was, at worst, a reasonable error'.") (quoting Jaffe v. Fitzgerald, No. 06-CV-0317 (DGT) (WDW), 2009 U.S. Dist. LEXIS 26274, at *26 (E.D.N.Y. Mar. 27, 2009)).

In light of the foregoing, even if the Court were to find that defendant Henry used excessive force against plaintiff, which she did not, she would be entitled to the defense of qualified immunity on plaintiff's excessive force claim.

Dated: October 5, 2016
      New York, New York

| | |
|---|---|
| PETERSON DELLECAVE LLP<br>Malcolm Anderson, Esq.<br>*Counsel for Plaintiff*<br>233 Broadway, Suite 1800<br>New York, New York 10279 | ZACHARY W. CARTER<br>Omar J. Siddiqi, Esq.<br>Corporation Counsel of the City of New York<br>*Counsel for Defendants*<br>100 Church Street<br>New York, New York 10007 |
| By: _____/s/_____<br>    MALCOLM ANDERSON | By: _____/s/_____<br>    OMAR J. SIDDIQI |